IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JEROME FARRIS AND LORIE EADIE, On behalf of themselves and all others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DORCHESTER COUNTY AND PAUL BROUTHERS DORCHESTER COUNTY CORONER *in his individual and official capacity*,<br><br>Defendants. | Case No.: 2:25-cv-07246-DCN<br><br>COLLECTIVE ACTION COMPLAINT<br>(Jury Trial Requested) |

Plaintiffs Jerome Farris, ("Mr. Farris") Lorie Eadie ("Ms. Eadie") (collectively "Plaintiffs") file this Complaint against Defendants Dorchester County ("County") and Paul Brouthers Dorchester County Coroner ("Coroner") (collectively "Defendants") through their undersigned attorney, respectfully alleges unto this Honorable Court as follows:

**NATURE OF CLAIM**

1.      This is an action for violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*, (FLSA). Plaintiffs are a former Deputy Corners employed by the Defendants. Defendants engaged in a practice of wage theft by failing to pay Plaintiffs and similarly situated Deputy Corners time and half when they worked over 40 hours in a workweek.

2. Plaintiffs bring this action as a collective action pursuant to 29 U.S.C. §216(b) on behalf of themselves and all similarly situated Deputy Corners who suffered damages because of Defendants' violations of the FLSA.

3. Plaintiffs bring claims for unpaid wages, treble damages, and other relief under the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann § 41-10-10, *et seq*.

## PARTIES AND JURISDICTION

4. Defendant County is a local government, which consists of numerous agencies and is located within the State of South Carolina. The County is a governmental agency responsible for funding and providing facilities and equipment to the Coroner.

5. The Coroner is an elected official who oversees a staff of Deputy Coroners that investigate violent, sudden or suspicious deaths within the County.

6. Mr. Farris is a citizen and resident of Berkeley County, South Carolina and at all times relevant to this complaint was employed jointly by the Coroner and the County.

7. Ms. Eadie is a citizen and resident of Dorchester County South Carolina and at all times relevant to this complaint was employed jointly by the Coroner and the County.

8. Venue is proper in this District because the Defendants have conducted substantial, continuous and systematic commercial activities in Dorchester County. Additionally, the unlawful labor practices and policies giving rise to Plaintiffs' claims were committed in the Charleston Division of this Court.

9. At all times, pertinent to this Complaint, Defendants were engaged an in interstate commerce or in the production of interstate commerce as defined by the Act, 29 U.S.C. § 203(r) and 203(s).

10. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' pendent claims, which are brought pursuant to the common law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

11. Plaintiff's and similarly situated Deputy Coroners are jointly employed by the County and Coroner.

12. Both the Coroner and the County are "employers" of Plaintiffs, as that term is defined by the FLSA 29 U.S.C.S. § 203.

13. Both the Coroner and the County are "employers" of Plaintiffs, as that term is defined by the South Carolina Payment of Wages Act, S.C Code Ann § 41-10-10 (1).

## FACTUAL ALLEGATIONS

14. The Coroner is involved in the day-to-day operation and has direct responsibility for supervising the Deputy Coroners. At all times, relevant to this complaint, Plaintiffs were duly sworn Deputy Coroners in Dorchester County.

15. The Coroner and the County exercise operational control over all the Deputy Corners and are directly responsible for their misclassification and the failure to pay them overtime, thus the Coroner and the County are jointly and severally liable.

16. Plaintiffs and similarly situated Deputy Coroners' primary duties were to investigate deaths within Dorchester County to determine the cause and manner of death, notify the next of kin, and issue death certificates.

17. Mr. Farris was employed by the Defendants as a Deputy Coroner from July 22, 2019, until February 28, 2025.

18. Ms. Eadie was employed by the Defendants as a Deputy Coroner from August 28, 2024, to February 27, 2025.

19. Plaintiffs and similarly situated Deputy Coroners were misclassified as exempt employees and were paid a salary.

20. Plaintiff and similarly situated Deputy Coroners were not compensated for the hours they worked beyond forty (40) hours per week, even though they regularly worked over forty hours a week.

21. Plaintiff and similarly situated Deputy Coroners regularly worked Monday through Friday from 8:30 a.m. to 5:00 p.m., and were scheduled to be on-call for 24 hours, then for the next 48 hours, they were not on call. Sometimes they were on-call more often because the Coroner's office was often short-staffed.

22. Plaintiffs and similarly situated Deputy Coroners rarely if ever, had a "day-off." On their "days off" they handled matters such as completing paperwork, obtaining autopsy results, updating reports, taking calls from family members, releasing bodies to the funeral home, requesting and reviewing medical records, attending weekly meetings, attending trainings on their off days, and returning property to family members.

23. Plaintiffs and similarly situated Deputy Coroners were responsible for a copious amount of paperwork such as: the death certificate, coroner's intake form, witness statements, autopsy order, property sheet, burial removal permits, requesting and reviewing medical records, account for a decedent's medicines and cremation letters.

24. Plaintiffs and similarly situated Deputy Coroners were required to answer their phones 24 hours a day, 7 days a week, or they would be reprimanded.

25. Descendants' family members often called Plaintiffs and similarly situated Deputy Coroners on their days off, requesting information about their loved ones, and those phone calls ranged from 15 minutes to an hour.

26. If Plaintiffs and similarly situated Deputy Coroners were called in to investigate a death on a day they were not scheduled to be on-call they were only paid an additional fifteen dollars ($15.00) regardless of how long they worked or how many deaths they investigated.

27. Plaintiffs, as well as similarly situated Deputy Coroners, routinely worked between sixty (60) and seventy (70) hours a week; yet they were not compensated for the hours they worked beyond forty (40) in a work week.

28. Plaintiffs as well as similarly situated Deputy Coroners operated on very sleep. In fact, Mr. Farris collapsed and was hospitalized for exhaustion and dehydration. As a result of the collapse, he suffered a severe head injury.

29. Because they rarely had days off and were required to answer their phone 24/7, even on their days off, this prevented Plaintiffs and similarly situated Deputy Coroners from engaging in normal personal activities and spending time with their families.

30. The Defendants were aware that Plaintiffs and similarly situated Deputy Coroners regularly worked more than forty (40) hours a week but were only paid for forty (40) hours.

31. In fact, the Coroner told Plaintiffs that were _never_ off work, they were only not on call and they were always required to answer calls to their County phone.

32. The Coroner, the Chief Deputy Coroner, and/or administrative staff for the Dorchester County Coroner's Office frequently called Plaintiffs and similarly situated Deputy Coroners even if they were not on-call.

33. The Coroner, the Chief Deputy Coroner, and/or administrative staff for the Dorchester County Coroner's Office often saw Plaintiffs and similarly situated Deputy Coroners working on their days off.

34. The Coroner, the Chief Deputy Coroner, and/or administrative staff for the Dorchester County Coroner's Office could see from the MDI software program that Plaintiffs and similarly situated Deputy Coroners were logging in and working on evenings and weekends when they were not on call.

35. Plaintiff and other similarly situated employees had an employment agreement with the Coroner that when they obtained their American Board of Medical Legal Death Investigators certification, that they were receive a $3,000-5,000 pay raise. Yet, Defendants failed to pay Plaintiffs the raise they promised for obtaining additional certification.

36. The Defendants failed to keep accurate records of the time that Plaintiffs and similarly situated Deputy Coroners worked.

37. Defendants violated FLSA's recordkeeping regulations, as set forth 29 C.F.R. § 516.2.

38. Defendants knowingly and willfully violated the FLSA by failing to pay Plaintiffs and similarly situated Deputy Coroners time and a half of their regular wage when they worked over forty hours a week.

39. Plaintiffs and similarly situated Deputy Coroners, asked the Chief Deputy Coroner why they were not paid for the time they spent working over forty hours a week. The Chief Deputy Coroner told them that they were salaried employees and were not entitled to overtime.

40. Defendants have acted intentionally and in bad faith by not compensating Plaintiffs for the hours they worked. Plaintiffs are entitled to liquidated and treble damages. There is no good-faith dispute that they are entitled to overtime.

41. Upon information and belief, the Coroner and the County are aware that other Coroners' Offices[1] have been sued for failing to pay overtime and he has failed to take measures to comply with FLSA.

### Misclassification

42. However, Plaintiffs, and similarly situated Deputy Coroners, were non-exempt employees for purposes of the overtime compensation provisions of the FLSA.

43. The Defendants misclassified Plaintiff and similarly situated Deputy Coroners, as exempt employees under the FLSA.

44. Plaintiffs' and similarly situated Deputy Coroners, primary duties did not involve performing work that requires advanced knowledge in a field of science.

45. Nor did Plaintiffs' and similarly situated Deputy Coroners' primary duties involve a prolonged course of specialized intellectual instruction given that the minimum requirements for the position was a high school diploma or its equivalent and (3) three years of related experience.

46. Although Plaintiffs' and similarly situated Deputy Coroners were required to obtain the South Carolina Justice Academy Coroner Certification within one (1) year the class was only two weeks long.

47. Plaintiffs, and similarly situated Deputy Coroners were not selected to be members of the Coroner's personal staff. Nor were they appointed by the Coroner to serve

---

[1] 2:20-cv-03937-DCN *Mazzell et al v. Oliver et al*

on a policymaking level. Accordingly, they are not exempt pursuant to 29 U.S.C. § 203(e)(2)(C).

48. Plaintiffs, and similarly situated Deputy Coroners, were supervised and reported to the Chief Deputy Coroner.

49. The Chief Deputy Coroner not, the Plaintiffs worked in an intimate and sensitive position of trust, close to the Coroner. Plaintiffs, and similarly situated Deputy Coroners, did not serve in high levels within the chain of command.

50. Plaintiffs, and similarly situated Deputy Coroners, were not employed in any bona fide executive, administrative, or professional capacity.

51. Plaintiffs, and similarly situated Deputy Coroners, did not have the authority to hire, fire or discipline employees. Nor could Plaintiffs and similarly situated Deputy Coroners set or adjust employees' rates of pay.

52. Plaintiffs and similarly situated Deputy Coroners' duties involved carrying out the day-to-day work of the Coroner's Office.

53. Plaintiffs, and similarly situated Deputy Coroners, did not direct the work of two employees, nor were they involved in any management decisions for the County or the Coroner.

**Joint Employers**

54. Plaintiff, as well as similarly situated Deputy Coroners, were employed jointly by the Coroner and the County.

55. The Coroner and the County exercised control over Plaintiffs and similarly situated Deputy Coroners.

56. The Coroner and the County had authority over the terms and conditions of Plaintiffs' as well as similarly situated Deputy Coroners, employment.

57. Plaintiffs and similarly situated Deputy Coroners, worked in a building owned and operated by the County.

58. The County provided all the equipment for Plaintiffs and situated Deputy Coroners to perform their jobs.

59. The County provided Plaintiffs and similarly situated Deputy Coroners with vehicles, gas cards, cell phones.

60. Upon information and belief, the Plaintiffs and similarly situated Deputy Coroners had to comply with the Counties policies and procedures to operate a County vehicle.

61. The County could restrict Plaintiffs' and similarly situated Deputy Coroners' privileges to operate County vehicles and use County gas cards.

62. Plaintiffs, and similarly situated Deputy Coroners, were paid by the County.

63. Plaintiffs and similarly situated Deputy Coroners receive employment benefits such as health, dental vision, annual and sick leave from the County.

64. The County required Plaintiffs and similarly situated Deputy Coroners to submit to random drug tests.

**FOR A FIRST CAUSE OF ACTION**
**(FLSA - Unpaid Overtime Wages)**
**(Class Claims)**

65. Plaintiffs, and similarly situated Deputy Coroners, reallege and incorporate by reference all preceding paragraphs as if specifically set forth herein.

66. Section § 207(a) requires employers to compensate their employees at a rate not less than one-and-a-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

9

67. Plaintiffs and similarly situated employees routinely worked in excess of forty (40) hours during the workweek(s).

68. Defendants failed to compensate Plaintiffs and similarly situated employees in accordance with the FLSA's overtime provision when they worked in excess of forty (40) hours during the workweek(s)

69. Plaintiffs and similarly situated employees were non-exempt employees and were entitled to overtime compensation when they worked over forty hours a week.

70. Defendants violated the FLSA, 29 U.S.C. § 201, *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

71. Plaintiffs and similarly situated employees are entitled to recover unpaid overtime wages, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs

**SECOND CAUSE OF ACTION**
**(South Carolina Payment of Wages Act)**
**(Individual Claims)**

72. Plaintiffs incorporate by reference all preceding paragraphs as if they were set forth herein verbatim.

73. Each Defendants are "employers" as defined by S.C. Code § 41-10-10(1).

74. Defendants employ Plaintiffs within the State of South Carolina.

75. The Defendants violated the Plaintiffs employment agreement by not paying them the $3,000-5,000 in wages they were promised for obtaining their American Board of Medical Legal Death Investigators certification.

76. Defendants promised to pay Plaintiff's and similarly situated employees if they obtained

77. Plaintiffs are owed wages pursuant to the South Carolina Payment of Wages Act because the Defendants did not pay Plaintiffs their wages due per their employment agreement.

78. Defendants have refused to pay Plaintiffs wages due, as required by S.C. Code §41-10-40 and -50.

79. Pursuant to S.C. Code §41-10-80(C), Plaintiffs are entitled to recover in this action an amount equal to three times the full amount of their unpaid wages, plus costs and reasonable attorney's fees.

**THIRD CAUSE OF ACTION**
**(Breach of Contract)**
**(Individual Claims)**

80. Plaintiffs hereby incorporates by reference each paragraph of this Complaint, as if fully set forth herein.

81. If the Court determines that $3,000-5,000 the Plaintiffs were promised for obtaining additional certification is not wages the Court could find this promise constituted a contract.

82. Defendants entered a contract with Plaintiffs to pay them $3,000-5,000 for obtaining additional certification.

83. Plaintiffs fulfilled their obligations of the contract. Defendants breached the contract by refusing to Plaintiffs $3,000-5,000 for obtaining their certification.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and similarly situated Deputy Coroners seeks judgment against the Defendants as follows:

a) Designation of this action as a collective action on behalf of the FLSA collective class pursuant to 29 U.S.C. § 216 (b);

11

b)	Court Order requiring Defendants to preserve employment records, including payroll and time records during the pendency of this action;

c)	Declaratory Judgement against both Defendants finding they violated the South Carolina Payment of Wages Act;

d)	Declaratory Judgement against both Defendants finding they violated FLSA;

e)	Declaratory Judgement that their violation of the FLSA was willful;

f)	Judgment award against Defendants for all overtime worked at one-and one-half times the Plaintiffs' and similarly situated Deputy Coroners' regular rate of pay;

g)	Liquidated damages in an amount equivalent to the overtime damages and unpaid owed to Plaintiffs and similarly situated Deputy Coroners;

h)	An award to Plaintiffs and similar situated Deputy Coroners of their unpaid wages; pursuant to the South Carolina Payment of Wages Act;

i)	An award of treble damages pursuant to the South Carolina Payment of Wages Act;

j)	An award of post judgement and pre-judgement interest;

k)	An award of the reasonable attorneys' fees and costs;

l)	All such further relief as the Court deems just and equitable.

## JURY DEMANDED

Plaintiffs hereby demands a trial by jury.

Respectfully submitted,

s/Marybeth Mullaney
Marybeth Mullaney (S.C. Bar #6685)
Mullaney Law
4900 O'hear Ave
North Charleston, SC 29405
 P: (843) 588-5587
marybeth@mullaneylaw.net

12

*Attorney for Plaintiffs*

July 10, 2025
North Charleston, South Carolina.

2:25-cv-07246-DCN     Date Filed 07/14/25     Entry Number 1     Page 13 of 13