**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| JEROME FARRIS, LORIE EDIE, and PAMELA WHITE *on behalf of themselves and all others similarly situated*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:25-cv-07246-DCN |
| vs. | ) ) | **ORDER** |
| DORCHESTER COUNTY and PAUL BROUTHERS, *Dorchester County Coroner, in his individual and official capacity*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants Paul Brouthers (the "Coroner"), in his individual and official capacity as Dorchester County Coroner, and Dorchester County's (the "County") (together, with the Coroner, "Defendants") motion for judgment on the pleadings, ECF No. 16. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## I.  BACKGROUND

This dispute concerns the Coroner's alleged failure to pay overtime wages to his deputies. ECF No. 1, Compl. ¶¶ 65–71. Plaintiffs Jerome Farris, Lorie Edie, and Pamela White ("Plaintiffs") served as deputies to the Coroner until February of 2025. Id. ¶¶ 17–18. During their employment, Plaintiffs allege they worked over forty (40) hours in a week and rarely received a day off. Id. ¶¶ 20, 22. In addition, Plaintiffs were expected to answer the Coroner's telephone calls "24 hours a day, 7 days a week, or they would be reprimanded." Id. ¶ 25. The Coroner purportedly told Plaintiffs they "were <u>never</u> off

1

work." Id. ¶ 31 (emphasis in original). Plaintiffs also allege the Coroner entered into an "employment agreement" with them in which he promised to pay Plaintiffs between $3,000 and $5,000 after obtaining a certificate from the American Board of Legal Death Investigators. Id. ¶ 35. Despite receiving their certificates, Plaintiffs allege they never received payment. Id.

Plaintiffs contend that they were underpaid for overtime work because the Coroner misclassified them as exempt from the Fair Labor Standard Act's ("FLSA") overtime provisions. Id. ¶ 42; see also 29 U.S.C. §§ 201, et seq. As for the County, Plaintiffs claim to have been jointly employed by the County and the Coroner, thereby subjecting the County to liability for the Coroner's actions. See Compl. ¶¶ 54–64. Plaintiffs maintain that the County exercised control over their employment in the following respects: retaining the authority to set the terms and conditions of employment; owning and operating the building where deputy coroners worked; providing equipment, gas cards, vehicles, and cell phones to deputy coroners; requiring compliance with County policies to operate a County vehicle; providing various employment benefits; paying deputy coroners' salaries; and requiring deputy coroners to submit to random drug tests. Id.

Plaintiffs initiated this action on July 14, 2025, asserting three causes of action against all Defendants: (1) an FLSA claim for unpaid overtime wages, (2) a claim under the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10 et seq., arising from the Coroner's failure to pay additional wages upon Plaintiffs' receipt of a professional certification despite the Coroner having promised to do so; (3) and a breach of contract claim arising from the same conduct. Id. ¶¶ 65–83. Defendants jointly

moved for judgment on the pleadings on February 10, 2026.  ECF No. 16.  Plaintiffs

responded in opposition on February 24, 2026, ECF No. 20, and Defendants replied on

March 3, 2026, ECF No. 21.  The court held a hearing on the motion on May 5, 2026.[1]

ECF No. 23.  As such, the motion is fully briefed and now ripe for the court's review.

## II.  STANDARD

The Rule 12(b)(6) standard for a motion to dismiss is also applicable to motions

for judgment on the pleadings made pursuant to Rule 12(c).  Deutsche Bank Nat'l Trust

Co. v. I.R.S., 361 F. App'x 527, 529 (4th Cir. 2010).  Rule 12(c) provides that "[a]fter the

pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Because Rule 12(b)(6) and Rule

12(c) motions are judged under the same standard, the Rule 12(c) standard is "fairly

restrictive[,]" as "hasty or imprudent use of this summary procedure by the courts

violates the policy in favor of ensuring to each litigant a full and fair hearing on the

merits of his or her claim or defense."  5C Charles A. Wright & Aurthur R. Miller,

Federal Practice and Procedure § 1368 (3d ed. 2011).  The court is thus "mindful that a

Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the

merits of the plaintiff's claims or any disputes of fact."  Massey v. Ojaniit, 759 F.3d 343,

353 (4th Cir. 2014).  Similarly, the court accepts "all well-pleaded allegations in the

plaintiff's complaint as true" and draws "all reasonable factual inferences from those

---

[1] The court questioned Plaintiffs' counsel at the motion hearing as to whether County was a proper party to the second and third causes of action given the complaint does not allege the County was involved in the Coroner's failure to pay the promised wages upon Plaintiffs receiving a professional certification.  See ECF No. 23.  Plaintiffs' counsel thereafter consented to dismissing the second and third causes of action as to the County.  See id.  As such, the court will grant Defendants' motion on the second and third causes of action as to the County.

[allegations] in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); see also BET Plant Servs., Inc. v. W.D. Robinson Elec. Co., 941 F. Supp. 54, 55 (D.S.C. 1996) ("[A] defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff.").

As under Rule 12(b)(6) motions, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[ ]'" to survive a motion for judgment on the pleadings. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." See id. Determining whether a complaint states a plausible claim for relief is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense."[2] Id. at 679.

### III.   DISCUSSION

The County and the Coroner each assert separate grounds for dismissal. ECF No. 16 at 3–11. The County argues the FLSA claim should be dismissed because a county

---

[2] Defense counsel represented at the motion hearing that Defendants had moved for judgment on the pleadings, despite not relying on any materials beyond the complaint, because a Rule 12(b)(6) motion would have been untimely as Defendants had already filed an answer. See ECF No. 23; Fed. R. Civ. P. 12(b). Rule 12(h)(2)(B) permits the court to consider a motion for failure to state a claim under Rule 12(c). Fed. R. Civ. P. 12(h)(2)(B). Because Defendants seek relief on the ground that Plaintiffs have failed to state a claim, the court uses the term "dismiss" in this order for the sake of convenience despite the motion being one for judgment on the pleadings.

cannot be the employer of an elected official's deputies under South Carolina law. Id. at 3–6. The Coroner, for his part, contends the Eleventh Amendment bars all claims against him in federal court. Id. at 6–11. The court takes the arguments in turn.

### A. FLSA

Plaintiffs assert a claim against the County under the FLSA for unpaid overtime wages. Compl. ¶ 65–71. Plaintiffs specifically plead a joint employment theory to hold the County accountable for the alleged FLSA violations resulting from the Coroner's conduct. Id. ¶¶ 54–64. The County seeks dismissal of this claim, arguing that its status as a county government and Plaintiffs' status as employees of an elected official preclude a finding that it was Plaintiffs' employer as a matter of law. See ECF No. 16 at 3–6.

The County points the court to a South Carolina statute providing that a county's "employment and discharge authority" "does not extend to any personnel . . . under the direction of an elected official." See ECF No. 16 at 3 (citing S.C. Code Ann. § 4-9-30(7)). The office of the coroner is an elected position in South Carolina. S.C. Const. art. V, § 24 ("There shall be elected in each county . . . a coroner[.]"). Interpreting Subsection 30(7), the South Carolina Supreme Court has held that a county administrator could not enforce a county's personnel policies against the employees of an elected official. Eargle v. Horry Cnty., 545 S.E.2d 276, 279–80 (S.C. 2001). Pursuant to Eargle, the County argues that it has no employment authority or control over Plaintiffs and thus cannot be deemed their employer as a matter of law. ECF No. 16 at 4–6. A putative employer's control over a worker is determinative of the employment inquiry in the County's view, and it notes that federal courts frequently turn to state law to determine whether a local government exercises sufficient control over the employee of an elected

5

official to be deemed an employer under federal employment laws. Id. at 4. The County, however, fails to identify the standard that governs whether a party can be deemed a joint employer under the FLSA.[3] See id.

Plaintiffs argue in opposition that neither Eargle nor Subsection 30(7) are determinative of whether they have plausibly alleged that the County and the Coroner were their joint employers under the FLSA. ECF No. 20 at 4–5. The court agrees.

To state a claim under the FLSA, a plaintiff must plausibly allege an employment relationship. Aguirre v. Joe Theismann's Rest., 2019 WL 12267459, at *3 (E.D. Va. July 23, 2019). The FLSA broadly defines an "employer" to be "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA should "not be interpreted in a narrow, grudging manner." Tenn. Coal Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944), superseded in part by statute, 29 U.S.C. § 254(a) (1947). Rather, it should be "broadly interpreted" to effectuate "the remedial and humanitarian" purpose of the Act. Benshoff v. City of Va. Beach, 180 F.3d 136, (4th Cir. 1999) (citing Tenn. Coal, 321 U.S. at 597).

Though the FLSA makes no express reference to "joint employment," the Supreme Court "has long recognized that two or more entities may constitute joint employers" under the FLSA. Salinas v. Comm. Interiors, Inc., 848 F.3d 125, 133–35 (4th Cir. 2017) (first citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 724–25 (1947);

---

[3] The County also argues that "Plaintiffs tacitly admit they were [only] the Coroner's employee's" by citing to various allegations of the complaint that omit any mention of the County. ECF No. 16 at 5. This argument does not address Plaintiffs' allegations of a joint employment relationship between the County and the Coroner and, furthermore, is not tethered to any legal standard for employment. See id. Because this argument is not legally supported, it merits no further consideration.

then citing Falk v. Brennan, 414 U.S. 190, 195 (1973)).  The Fourth Circuit has set forth a two-step framework to analyze FLSA joint employment claims: first, the district court should determine whether two entities may be treated as joint employers; second, the court should then determine whether "the worker constitutes an employee or independent contractor of the combined entity, if they are joint employers, or each entity, if they are separate employers."  Salinas, 848 F.3d at 139–40 (citing Schultz v. Capital Int'l. Sec., Inc., 466 F.3d 298, 305–07 (4th Cir. 2006)).

The first step of the inquiry turns on whether the purported joint employers "are not completely dissociated with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment."  Salinas, 848 F.3d at 141 (internal quotation marks and citation omitted). In making this determination, the Fourth Circuit instructs district courts to consider six factors:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
>
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
>
> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Id. at 141–42 (4th Cir. 2017).[4]

Plaintiffs provide a thorough analysis of each factor to affirmatively demonstrate that they have plausibly alleged a joint employment relationship. See ECF No. 20 at 7–10. The court need not analyze the Salinas factors here, however, because the County does not argue in its initial motion that Plaintiffs have failed to plausibly plead the existence of a joint employment relationship. See ECF No. 16. Instead, the County argues that it cannot be considered Plaintiffs' employer as a matter of law because county governments in South Carolina lack control over the employees of elected officials. See id. at 3–6. As the movant, the burden falls on the County to show that Plaintiffs have failed to state a claim under the FLSA; the burden is not on Plaintiffs to affirmatively prove that their claim is plausibly alleged. See Aguirre, 2019 WL 12267459, at *3;

---

[4] The Salinas factors provide a framework for courts to ultimately determine whether two or more entities are "not completely dissociated" with respect to a worker's employment—a term used in a Department of Labor Regulation that provided guidance on when two or more entities may constitute joint employers under the FLSA. See 848 F.3d at 139–42 (emphasizing that Department of Labor regulations are "the starting point" for the joint employment inquiry). Although this regulation has been repealed since Salinas was decided and has yet to be replaced, see 91 Fed. Reg. 21878, 21879–21884, district courts in this circuit continue to analyze these six factors when performing the first step of the joint employment inquiry, see, e.g., Hatcher v. Cnty. of Hanover, 2025 WL 2815644, at *8 (E.D. Va. Sept. 30, 2025); Herbert Core Drill, LLC v. Brothers Mech. Inc., 2024 WL 4955281, at *7–8 (D. Md. Dec. 23, 2024).

Electronic Merchant Sys. LLC v. Gaal, 58 F.4th 877, 882 (6th Cir. 2023) ("[B]urden of demonstrating that the complaint fails to adequately state a claim falls on the defendant."). And while the County provides some counter argument on the Salinas factors in its reply brief, see ECF No. 21 at 5–6, those arguments should have been raised in its initial motion because Plaintiffs clearly plead a theory of joint employment in their complaint. See Compl. ¶¶ 53–64 (placing allegations describing the County's control and authority over deputy coroners under a "**Joint Employers**" heading (emphasis in original)). By failing to include these arguments in its initial motion—or to even identify the FLSA's joint employment standard—the County waived the argument that Plaintiffs failed to plausibly allege a joint employment relationship between it and the Coroner. Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." (citing United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006))).

Even if the court were to consider both parties' arguments on the Salinas factors, it would still find that a joint employer relationship between the County and the Coroner is plausibly alleged.[5] See Compl. ¶¶ 54–64; Hatcher, 2025 WL 2815644, at *9–11 (finding, at summary judgment, that all Salinas factors favored a county being the joint employer of sheriffs' deputies when county, inter alia: provided vehicles and other equipment to deputies; owned the building where deputies worked; provided various

---

[5] The County also argues that Salinas is not applicable to "the unique situation of elected officials and counties within South Carolina's system of home rule government." ECF No. 21 at 3–4. The court finds this argument unpersuasive. See Hatcher, 2025 WL 2815644, at *9–11 (applying Salinas factors to determine whether sheriff's deputies were jointly employed by county and sheriff).

employment benefits to deputies, and processed and paid deputies' paychecks); Herbert Core Drill, LLC, 2024 WL 4955281, at *7 ("An in depth analysis of the Salinas factors is inappropriate at motion to dismiss stage."); Schultz, 466 F.3d at 306 ("The ultimate determination of joint employment must be based upon the circumstances of the whole activity.") (internal quotation marks and citation omitted)).

The argument that was advanced by the County in its initial motion—that state law precludes it from being considered an employer under the FLSA—does not carry the County's burden either because it is not tethered to the FLSA's joint employment standard or even the FLSA's statutory definition of an employer. See ECF No. 16 at 3–6. While state law may be a relevant consideration in determining whether an employment relationship exists, it is not dispositive of whether the County can be deemed an employer of an elected official under the FLSA. See Hatcher, 2025 WL 2815644, at *10 (rejecting a county's argument that it was "legal[ly] impossib[le]" for it be a joint employer of sheriff's deputies under state law even when the sheriff was "an independent constitutional officer"); see also Salinas, 848 F.3d at 143 ("[A]n entity may constitute an employer for purposes of the FLSA even if it not an employer under other statutes."). The County cites to many instances of federal courts relying on state law to determine whether a local government entity was an employer of local elected officials, see ECF No. 16 at 4–5; however, it only cites to a single case where a court determined that a county was not an employer of sheriff's deputies under the FLSA. See id. (citing Brickey v. Cnty. of Smyth, Va., 944 F. Supp. 1310, 1315–17 (W.D. Va. 1996)). But, Brickey's persuasive value is limited because it was decided prior to the Fourth Circuit's decision in Salinas. See Brickey, 944 F. Supp. at 1315–17; Salinas, 848 F.3d at 141–42. Brickey

10

was also decided on a summary judgment record, and it would thus be improper to dismiss the instant case prior to discovery to inform the fact-intensive joint employment inquiry required under Salinas.  See Brickey, 944 F. Supp. at 1312; Salinas, 848 F.3d at 141–42; see also Schultz, 466 F.3d at 306.  For these reasons, the county has not met its burden of showing it cannot be Plaintiffs' employer as a matter of law, and the court will deny its motion for judgment on the pleadings as to the FLSA claim.

### B.  Eleventh Amendment Immunity

Plaintiffs assert each of their claims against the Coroner in both his official and individual capacity.  See Compl. ¶¶ 65–83.  The Coroner seeks dismissal of both the official and individual claims, arguing the Eleventh Amendment bars Plaintiffs from pursuing these claims in federal court.  See ECF No. 16 at 6–11.  Plaintiffs did not respond to the Coroner's challenge to their official capacity claim, see ECF No. 20, and Plaintiffs' counsel confirmed at the motion hearing that Plaintiffs were content to forego their claims against the Coroner in his official capacity, see ECF No. 23.  As such, the court will grant Defendants' motion as to claims against the Coroner in his official capacity, leaving only the individual capacity claims for review.

The Coroner argues the individual capacity claims should be dismissed because the Coroner in his official capacity "is the real party in interest."  Id. at 9.  In other words, the Coroner believes the individual capacity claim is, in substance, an official capacity claim that Plaintiffs have "merely denominat[ed] . . . as one brought . . . individually" to avoid dismissal pursuant to the Eleventh Amendment.  Id. (citing Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001), overruled in part on other grounds by Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003)).  In opposition, Plaintiffs argue that a state

11

official is individually liable for FLSA violations unless "the complaint is . . . a challenge to an official state policy." ECF No. 20 at 13 (citing Stamaski v. Lawley, 44 F.4th 318 (5th Cir. 2022)). Because "the complaint targets the personal conduct" of the Coroner, Plaintiffs contend that their individual capacity claim is legitimate and therefore not barred under the Eleventh Amendment. See ECF No. 20 at 13–14.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. It is well-established that this language bars any suit in federal court for "money damages against an 'unconsenting state[,]'" even when the suit is initiated by a state's own citizens. Cromer v. Brown, 88 F.3d 1315, 1331–32 (4th Cir. 1996) (quoting Edelman v. Jordan, 415 U.S. 651, 663 (1974)); Bockes v. Fields, 999 F.2d 788, 790 (4th Cir. 1993). This immunity from suit is not limited to the state itself; it also extends to "arm[s] of the state," which includes "state officers acting in their official capacity." Cromer, 88 F.3d at 1332 (internal quotation marks and citation omitted).

The Supreme Court has long held that "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (quoting Ford Motor Co. v. Dep't of Treas., 323 U.S. 459, 464 (1945)). In Lizzi v. Alexander, the Fourth Circuit held that the state—and not individual agency employees—was the "real party in interest" to a Family and Medical Leave Act lawsuit because the claims against the individual employees were in fact official capacity claims. 255 F.3d at 136. The court

reached this conclusion because the complaint did not state whether the individual

employees "were being sued in their official or individual capacities[ ]" nor was there any

allegation of "ultra vires action taken by any individual employee." Id.  The court further

emphasized had plaintiff "actually used the phrase 'individual capacity,'" the Eleventh

Amendment would still bar claims against the individual employees because "mere

incantation of the term 'individual capacity' is not enough to transform" what is in

substance "an official capacity action into an individual capacity action." Id. at 136–37

(citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 543 (1986)).

Since Lizzi, the Fourth Circuit has further developed its "real, substantial party in

interest" doctrine into a more structured inquiry.  See, e.g., Martin v. Wood, 772 F.3d

192, 196 (4th Cir. 2014).  To determine whether a nominally "individual" claim against a

state official is actually an official capacity claim subject to the Eleventh Amendment's

bar to suit in federal court, the district court should first "examine the substance of the

complaint[.]" Id. (emphasis in original).  In doing so, the court considers the following

factors:

> (1)  were the allegedly unlawful actions of the state officials tied inextricably to their official duties,
>
> (2)  if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State,
>
> (3)   would a judgment against the state officials be institutional and official in character, such that it would operate against the State,
>
> (4)   were the actions of the state officials taken to further personal interests distinct from the State's interests, and
>
> (5)  were the state officials' actions ultra vires.

Id. (internal quotation marks and citations omitted).

Given the existence of binding Fourth Circuit precedent on the issue of distinguishing individual capacity claims from official capacity claims, the court will not, as requested by Plaintiffs, follow the Fifth Circuit's materially different approach to the same issue. See ECF No. 20 at 13 (citing Stramaski, 44 F.4th at 324–25 (holding that plaintiff's claim against state employed supervisor was not an official capacity claim because the supervisor "retaliated specifically against [the plaintiff]" and the plaintiff did not "challenge . . . a state policy being implemented by [the] supervisory employee.")); Martin, 772 F.3d at 196. The Coroner, for his part, asserts that Lizzi is controlling while ignoring subsequent developments to the "real, substantial party in interest" doctrine. See ECF No. 16 at 9–11. Even though both parties have failed to identify the controlling analytical framework set forth in Martin, the court will not ignore that binding precedent in resolving this issue. The court will thus examine the substance of the complaint to analyze the Martin factors outlined above. See 772 F.3d at 196.

Before analyzing the Martin factors, the court briefly considers whether the coroner's office is an "arm of the state" because—should the court determine the Coroner in his official capacity is the real party in interest to Plaintiffs' individual capacity claims—the Coroner must still be an "arm of the state" to receive immunity from suit in federal court under the Eleventh Amendment. See Cromer, 88 F.3d at 1332. Decisions from this district and the Fourth Circuit have consistently held that the county-wide elected office of sheriff is a state office entitled to Eleventh Amendment immunity. See, e.g., Gulledge v. Smart, 691 F. Supp. 947, 954–55 (D.S.C. 1988) (Sheriff entitled to Eleventh Amendment immunity because "more closely connected to the state than to the county."), aff'd. mem., 878 F.2d 379 (4th Cir. 1989); McCall v. Williams, 52 F. Supp. 2d

14

611, 614–15 (D.S.C. 1999); Billoni v. Bryant, 2015 WL 4928999, at *2 (D.S.C. Aug. 18, 2015); Cromer, 88 F.2d at 1332.  The Coroner contends the office of coroner "is no different[,]" and the court agrees.  In Gulledge, this court concluded that sheriffs were arms of the state because the South Carolina Constitution "establishes the elective office of county sheriff and his term of office[ ]" and authorizes "the General Assembly . . . to prescribe his duties and compensation."  691 F. Supp. at 944–45 (citing S.C. Const. art. V, § 24); see also Cromer, 88 F.2d at 1332 (citing Gulledge with approval for proposition that sheriffs are arms of the state in South Carolina).  The same constitutional provision relied upon in Gulledge also establishes the coroner's office as an elected position and gives the General Assembly equivalent authority over both offices.  See 691 F. Supp. at 944–45; S.C. Const. art. V, § 24 (providing the General Assembly with authority to establish the duties, compensation, and qualifications of both sheriffs and coroners).  As such, the office of the coroner is similarly "more closely connected to the state than to the county[ ]" and is thus an arm of the state entitled immunity under the Eleventh Amendment.  See Gulledge, 691 F. Supp. at 944–45; see also Cone v. Nettles, 417 S.E.2d 523, 524–25 (S.C. 1992) (relying on S.C. Const. art. V, § 24 to hold that "the sheriff [i]s a state official.").  Consequently, should the court find the Coroner in his official capacity to be the real party in interest to Plaintiffs' claims, he will then be immune from suit in this court pursuant to the Eleventh Amendment.  See Cromer, 88 F.2d at 1332.  To determine the real party in interest, the court will now consider the Martin factors.

The first Martin factor considers whether the allegedly unlawful actions on the part of state officials alleged in the complaint are tied inextricably to their official duties. Martin, 772 F.3d at 196.  The complaint generally alleges (1) that the Coroner

15

misclassified plaintiffs under the FLSA resulting in a failure to be compensated for overtime wages in violation of the FLSA, and (2) that the Coroner failed to pay Plaintiffs $3,000 to $5,000 in additional wages upon obtaining a professional certificate after the Coroner had promised to do so, which violated the SCPWA and resulted in a breach of contract. Compl. ¶¶ 42–83. In Martin, the Fourth Circuit concluded "every factor indicate[d] that [the individual defendants] [were] being sued in their official capabilities[ ]" even when the complaint alleged that the individuals "exercised authority to establish and control [plaintiff's] hours of work . . . and that, in the exercise of that authority, they failed and refused to include [overtime hours] in the computation of [plaintiff's] weekly wages[ ] in violation of the FLSA." 772 F.3d at 196. In other words, having the authority to "authorize overtime pay and refus[ing] to do so" is an act that is "inextricably tied" to the official duties of a state official overseeing state employees. See id. Here, Plaintiffs likewise allege the Coroner failed to compensate them for overtime wages in violation of the FLSA despite the Coroner having the ability to authorize that compensation. See Compl. ¶¶ 38, 43, 56, 65–71; see also Boerst v. Berkeley Cnty., 2016 WL 11643622, at *5 (D.S.C. Aug. 8, 2016) (rejecting argument that sheriff requiring "off the clock" work without paying overtime for that work was not inextricably tied to overseeing of his deputies) (citing Martin, 772 F.3d at 196); Billioni v. Bryant, 2015 WL 4928999, at *5 (D.S.C. Aug. 18, 2015) (finding sheriff's alleged failure to pay deputy for working during meal time and for attending trainings was inextricably tied to his official duties). This factor thus favors finding the Coroner in his official capacity to be the real party in interest to this suit.

16

On the second factor, the court looks to whether the burden would have been borne by the state had the desired relief had been authorized at the outset by state officials.  Martin, 772 F.3d at 196.  The complaint alleges that Plaintiffs were paid by the County—not the state.  Compl. ¶ 62.  Therefore, if the desired relief (i.e., additional wages) had been authorized prior to this lawsuit, the burden of paying the additional wages would not have been borne by the Coroner nor the state more generally.  See Martin, 772 F.3d at 196; see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989) ("States are protected by the Eleventh Amendment while municipalities are not[.]"); Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996) ("The Eleventh Amendment[ ] . . . affords no protection to local government entities . . . .").  As such, this factor favors allowing the claims to proceed against the Coroner in his individual capacity.

The third factor asks whether a judgment against state officials would be institutional and official in character such that it would operate against the state.  Martin, 772 F.3d at 196.  Because the office of coroner is an elected position subject to the authority of the General Assembly, the court finds that a judgment against the Coroner in this suit would be institutional and official in character.  See S.C. Const. art. V, § 24 (creating elected position of sheriff and coroner and providing the General Assembly with equivalent authority over both offices); Cone, 417 S.E.2d at 524–25 (relying on S.C. Const. art. V, § 24 to hold that the sheriff's office is "more closely connected to the state than to the county, [and] hence, a state official." (internal quotation marks and citation omitted)).

The fourth and fifth factors look to whether the state official's actions were in furtherance of the official's personal interests and whether the actions complained of were ultra vires. Martin, 772 F.3d at 196. The complaint contains no allegation of the Coroner acting outside the scope of his duties nor does it suggest the Coroner was acting in furtherance of personal interests when failing to pay overtime wages or to authorize additional pay after Plaintiffs obtained a work-related professional certificate. See Compl.; Martin, 772 F.3d at 196 (finding no allegation of state officials taking ultra vires action or of state officials acting in their personal interest when complaint alleged a refusal to approve additional compensation required under the FLSA). Both factors thus favor treating claims against the Coroner as official capacity claims.

In sum, all but one of the Martin factors favor finding the Coroner to be the "substantial, real party in interest[,]" to Plaintiffs' individual capacity claims. See Martin, 772 F.3d at 196. As such, the court finds that Plaintiffs' claims against the Coroner are claims against him in his official capacity. See Cromer, 88 F.3d at 1331–32; Boerst, 2016 WL 11643622, at *5. The Eleventh Amendment thus bars Plaintiffs from proceeding against the Coroner in federal court, see Cromer, 88 F.3d at 1331–32; Bockes, 999 F.2d at 790, and the Coroner is entitled to judgment on the pleadings on all claims against him for this reason.

18

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Defendants' motion for judgment on the pleadings as to all claims against the Coroner and as to the SCPWA and breach of contract claims against the County.  The court **DENIES** the motion as to Plaintiffs' FLSA claim against the County.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 24, 2026**
**Charleston, South Carolina**